UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>STEWART SILVESTRI,<br><br>    Defendant. | Case No. 23-cr-10153-DJC |

### DEFENDANT STEWART SILVESTRI'S SENTENCING MEMORANDUM

Defendant Stewart Silvestri submits this memorandum with respect to the application of 18 U.S.C. § 3553(a) to the facts and circumstances of his offense. For the reasons reflected in the memorandum and to be discussed at the sentencing hearing, Mr. Silvestri respectfully submits that a sentence of 42 months incarceration with credit for time served,[1] three years supervised release, a $10,000 fine, and a $100 special assessment, is sufficient but not greater than necessary to achieve the purposes of sentencing. *See* 18 U.S.C. § 3553(a).

**I.      Introduction.**

Mr. Silvestri is a 24-year-old young man, who has struggled heavily with mental health issues since he was a child, and substance abuse issues since his early teens. Mr. Silvestri has a keen mind and interest for engineering and mechanics. In recent years, this interest has included the mechanics and operation of firearms. His enthusiasm for engineering has included him

---

[1] Mr. Silvestri has been detained in federal custody on this offense since November 18, 2022, and should receive credit for time served since that date. *See* PSR at 2; 18 U.S.C. § 3585(b)(1) ("A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences as a result of the offense for which the sentence was imposed"). Prior to being detained in federal custody, Mr. Silvestri was detained in state custody from October 15, 2022 to November 18, 2022. PSR at 2. Mr. Silvestri also recommends that he be given credit for the 34 days in state custody because he was held on subsequently dismissed state charges arising out of the same incident. *See United States v. Moore*, 978 F.2d 1029, 1030-1031 (1992) (defendant awarded credit for time served in state custody on subsequently dismissed state charges arising out of same incident).

building or modifying his own firearms, like the firearms that are the subject of the current offense.  Despite his curiosity in firearms, Mr. Silvestri has no history of violence.  In fact, Mr. Silvestri is a gentle young man who has always tried to have a positive impact on those around him.  Mr. Silvestri realizes that this prosecution saved him from a downward spiral that was certain to end in disaster.  His arrest and detention have given him the clarity he needed to assess his life and commit himself to mental health and substance abuse treatment.  Mr. Silvestri understands that his sentence needs to reflect the seriousness of his offense, but he asks that the court impose a sentence that will allow him to begin supervised release and to comprehensively address his long-term mental health and substance abuse issues and treatment plan as soon as possible.

**II.    The Proposed Sentence Of 42 Months Incarceration with Credit for Time Served, Three Years Supervised Release, a $10,000 Fine, and a $100 Special Assessment Is Sufficient But Not Greater Than Necessary Under § 3553(A).**

   **1.    The Nature and Circumstances of the Offense and History and Characteristics of the Defendant.**

      A.    <u>The History and Characteristics of the Defendant.</u>

Mr. Silvestri is a young man who enjoyed a good childhood with a stable family support system.  Presentence Investigation Report ("PSR") ¶ 42.  He was raised by both parents in Brookline, Massachusetts.  *Id*.  His father is a real estate agent, while his mother is a radiologist.  *Id*.  The defendant has two sisters, Sarah and Mia.  Sarah is in culinary school in New York, while Mia is a college student who lives with their parents in Brookline.  *Id*. ¶ 43.  Growing up, Mr. Silvestri's family often spent a lot of time together.  *Id*. ¶ 42.  One of the activities Mr. Silvestri loved most was skiing.  *See* Letter in Support: Pamela DiPiro ("Exhibit A").  He was an avid skier, was a certified ski instructor by the Professional Ski Instructors Association, and he often spent time with extended family on weekends and vacations at Cannon Mountain in

Franconia, New Hampshire. *Id*. Throughout his life, Mr. Silvestri's immediate and extended family have been very supportive of him. *Id.*; *See* PSR ¶ 42. They remain supportive to this day. As more fully explained below, Mr. Silvestri has a network of support ready to work with him and the U.S. Probation Office to get him on the healthy and productive path he is determined to travel for the rest of his life.

Unfortunately, Mr. Silvestri has struggled with mental health issues since he was a child. *Id*. ¶ 49. Mr. Silvestri has been diagnosed with attention deficit disorder (ADD), depression, and anxiety. *Id*. Although not formally diagnosed until his high school years, he showed signs of ADD and depression very early in life, including frequent panic attacks and severe anxiety. *Id*. Despite his mental health struggles though, the defendant has never attempted, thought of, or exhibited signs of a desire to commit an act of self-harm. *Id*. Importantly, he also has never been violent toward others.

In addition to his struggles with mental health, Mr. Silvestri has fought substance abuse for years. Mr. Silvestri's substance abuse began at a young age. *Id*. ¶ 52. He first consumed alcohol at the age of 12 and drank alcohol throughout high school. *Id*. He mixed alcohol with Xanax during high school. *Id*. After suffering alcohol poisoning during his early teen years, the defendant stopped drinking altogether. *Id*. From his early to late teenage years though, Mr. Silvestri turned to other substances. *Id*. Those substances included marijuana, cocaine, ecstasy, mushrooms, LSD, and dimethyltryptamine (DMT). *Id*. As his substance abuse progressed, Mr. Silvestri turned to opiates. *Id*. ¶ 53. He used hydrocodone during high school, which then led to his abuse of oxycodone. *Id.* Eventually, Mr. Silvestri experimented with heroin. *Id*.

Mr. Silvestri has taken many steps, dating back to his high school years, to fight his substance abuse. With the support of his family, in 2016, Mr. Silvestri went to Utah for two

years to attend substance abuse and mental health treatment programs. *Id.* ¶ 43. There, he spent 78 days in the wilderness as part of the Elements Traverse program in Huntington, Utah. *Id.* Afterwards, Mr. Silvestri spent time in residential treatment programs in Salt Lake City, but later returned to the Elements Traverse Wilderness program. *See* Exhibit A. From there, Mr. Silvestri moved to a Sober College in Woodland Hills, California; he then moved to a sober living house in West Hills, California, working at Calabasas Country Club as a bag boy on the golf course. *Id.*

Despite his struggles with substance abuse during his high school years, Mr. Silvestri still thrived with his schoolwork. Because he did so well, Mr. Silvestri chose to return to the New England area after he was accepted into Quinnipiac University in the accelerated dual-degree BS/MBA program. *Id.* Mr. Silvestri thrived academically during his time at Quinnipiac, as he made the dean's list, earned a 3.98 GPA, and was inducted into the National Business Society. *See id.* *See also* Letter in Support: Stewart Silvestri Sr. ("Exhibit B"). Unfortunately, Mr. Silvestri continued to fight his battle with substance abuse during this time, and he failed to complete his studies at Quinnipiac University. PSR ¶ 43; Exhibit A.

Mr. Silvestri's drug use worsened during the pandemic while living back in Massachusetts. Exhibit A. During this time, he worked first as a seasonal employee for UPS, loading and unloading trucks. PSR ¶ 58; Exhibit A. While back in Massachusetts, Mr. Silvestri again sought to combat his substance abuse issues through the aid of rehab centers. He briefly attended Evoke Wellness in Cohasset, Massachusetts, and then was referred to Evoke's outpatient treatment center in Waltham, Massachusetts. *See* Exhibit A. Following his time at the outpatient treatment center in Waltham, Mr. Silvestri was discharged to a sober living house, the Strathmore House, of East Coast Recovery Center in Brighton. *Id.* Through a friend from

4

Rehab, he learned of the New Horizons Medical Rehab Center in Brookline, Massachusetts where he started suboxone therapy until his arrest. *Id*. At the time of his arrest, Mr. Silvestri worked at Home Depot, a job he performed well at and took pride in. Exhibit A; PSR ¶ 57. He also was attending Northeastern University Program for Special Studies part-time, participating in online classes. Exhibit A; PSR ¶ 56.

Those around Mr. Silvestri, particularly his mother, Pamela DiPiro, his father, Stewart Silvestri, and his neighbors, have served as a support network for him as he struggled with his mental health and substance abuse. They remain ready to help and support him. *See* Exhibit A. *See also* Letter in Support: Ginny Carroll ("Exhibit C"); Letter in Support: Martha Huntley and Steven Webler ("Exhibit D"); Letter in Support: Graeme Grant and Meredith Saillant, MD ("Exhibit E"); Letter in Support: John Sangmeister ("Exhibit F"); Letter in Support: Joshua Weiss ("Exhibit G"). When he is able to maintain his sobriety, those around Mr. Silvestri see glimpses of him being more like his "old self"; those around Mr. Silvestri recognize that he possesses the capacity for growth and ability to make positive contributions to society. *See* Exhibit F; Letter in Support: Madeline Fenton ("Exhibit H"); Exhibit E; Letter in Support: Luis E. Moreno and Maria H. Connor ("Exhibit I"); Letter in Support: Christine Denison, M.D ("Exhibit J"). Because of this capacity for growth and change, Mr. Silvestri's support network of family and friends hope to support him in his fight against addiction and his fight to become a positive contributor to society.

Mr. Silvestri himself has acknowledged his substance abuse and mental health issues, and he understands their negative impact both on his life and the lives of those around him. For example, years after Mr. Silvestri lived in sober living in California, he returned to his childhood neighbor's home to visit; during this visit, he offered his neighbors a heartfelt apology for

missing Christmas Eve dinner as a result of his substance abuse issues. Exhibit D at 2. Although it was difficult to do so because he was embarrassed about his behavior, Mr. Silvestri felt it was important to make amends with those close to him because he values their support. *Id*.

In letters to his parents while incarcerated for the current offense, Mr. Silvestri has acknowledged his shame and regret in committing this criminal offense. *See* Letter in Support: Stewart Silvestri 2-17-23 ("Exhibit K"). He has thanked both of his parents for the investment, both financially and emotionally, that each of them made in trying to keep him on the right path in life. *See* Letter in Support: Stewart Silvestri 5-11-23 ("Exhibit L"). In his letters to his parents since his incarceration, Mr. Silvestri has spoken of his recognition of his reckless behavior, and he understands that his substance abuse serves as a complicating factor in him living an independent and successful life. *Id*. Although Mr. Silvestri acknowledges his reckless behavior has resulted in a period of incarceration, he has accepted responsibility for his behavior and has vowed to "make his parents proud" in the next chapter of his life following his incarceration. *Id*.

        B.      <u>The Nature and Circumstance of the Offense</u>

On October 15, 2022, a Massachusetts State Police Trooper responded to calls of an erratic driver on Route 95 Southbound in Rowley, Massachusetts. PSR ¶ 8. The Trooper arrived at the scene and asked Mr. Silvestri for his license and registration. *Id*. Mr. Silvestri told the Trooper that he was asleep in the parking lot after having pulled off the highway when he realized he wasn't in any condition to drive safely. *Id*. ¶ 9. When Mr. Silvestri opened the driver's door, the Trooper saw two automatic pistols on the seat. *Id.* ¶ 8. Mr. Silvestri was arrested, his vehicle was searched, and the pistols were seized from his vehicle. *Id*. Those

6

pistols are the firearms at issue in this case.  Mr. Silvestri has pleaded guilty to one count of unlawful possession of machineguns, in violation of 18 U.S.C. ¶922(o).  *Id*. ¶ 1.

Mr. Silvestri's offense stems from his mental health and substance abuse issues, which contributed to his recklessness and poor decision-making.  As best explained by Mr. Silvestri's mother in her letter of support, "[Mr. Silvestri] is not evil or dangerous and holds no malicious intent.  He is a gun enthusiast with an incredible mind for engineering and mechanics that was obviously misguided."  Exhibit A at 3.  *See also* Letter in Support: Lily Fenton ("Exhibit M") (Mr. Silvestri's "strive for mastery and interest in building/engineering was misplaced when he learned about guns").  Growing up, Mr. Silvestri took an interest in engineering.  *Id.*  He built elaborate Lego sets, and even fabricated his own toys and other gadgets.  Exhibit B.  His strive for mastery of all things engineering began when he was quite young, when he would work as quickly as possible with his cousin to complete brain-teasing puzzles.  Exhibit M.  Those around Mr. Silvestri say that when he discovers a new hobby, his mind becomes fixated on it, and he strives to master it.  *See id.  See also* Exhibit A.

As Mr. Silvestri grew older, his fascination with all things engineering evolved.  He became enamored with building bow and arrows, buying airsoft guns, taking the guns apart, rebuilding them to make them shoot faster and more accurately, etc.  *Id.*  As Mr. Silvestri continued to struggle with his substance abuse, his mind for engineering turned towards a fascination with firearms and the mechanical workings of firearms.  Despite this recent fascination with firearms though, Mr. Silvestri has never shown signs of violence, and those in his support network vow that he is not a violent person.  *See* Exhibit A; Exhibit M*; See also* Letter in Support: Emily DiPiro ("Exhibit N").

### 2. Just Punishment and Deterrence.

A sentence of 42 months incarceration with credit for time served, three years supervised release, a $10,000 fine, and a $100 special assessment is a significant sentence that will "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," "afford adequate deterrence to criminal conduct," "protect the public from further crimes of [Mr. Silvestri]," and "provide [Mr. Silvestri] with needed [mental health and substance abuse] treatment in the most effective manner." *See* 18 U.S.C. § 3553(a)(2).

Mr. Silvestri admitted to the unlawful possession of two machineguns. However, as explained *supra*, Mr. Silvestri's offense was not the product of any malicious conduct. He has no history of violence. Instead, his offense is better described as the product of his keen mind for engineering and the mechanics of firearms, coupled with poor decision-making while struggling with a years-long battle with mental health and substance abuse issues.

Mr. Silvestri also recognizes that he possessed the firearms while also in possession of controlled substances. Notably, the firearms Mr. Silvestri possessed were not used in any way to facilitate his possession of controlled substances. Mr. Silvestri recognizes the increased dangerousness of possessing firearms while under the influence of drugs. The scenario Mr. Silvestri was involved in mitigates many of the concerns proscribing unlawful possession of firearms while possessing a controlled substance. Mr. Silvestri did not use firearms to procure controlled substances, nor were firearms used for any type of threatening conduct or violence related to his possession of controlled substances.

### 3. The Kinds of Sentences Available and the Sentencing Guidelines.

The charge of Unlawful Possession of a Machinegun, in violation of 18 U.S.C. § 922(o) carries with it no statutory mandatory minimum penalty. *See* 18 U.S.C. § 924(a)(2). With

respect to the sentencing guidelines, Mr. Silvestri agrees with the calculation in the PSR of a Total Offense Level of 27, Criminal History Category I, and a resulting sentencing range of 70 to 87 months.  PSR ¶ 66, 80.  The calculation is as follows:

> **Base Offense Level: 20**
> *See* USSG § 2K2.1(a)(4)(B)
>
> **Specific Offense Characteristics: Number of Firearms (+6)**
> *See* USSG § 2K2.1(b)(1)(C)
>
> **Specific Offense Characteristics: Possession of Firearm in Connection with Another Felony, Possession of Controlled Substances (+4)**
> *See* USSG § 2K2.1(b)(1)(C).
>
> **Acceptance of Responsibility and Guilty Plea: (-3)**
> S*ee* USSG § 3E1.1(a) & (b).
>
> **Total Offense Level: 27**

The U.S. Probation Office provided Judiciary Sentencing Information ("JSIN") statistics on the sentences for individuals whose primary guideline was USSG § 2K2.1, with the Total Offense Level of 27 and a Criminal History Category of I, after excluding individuals who received a §5K1.1 substantial assistance departure.  PSR ¶ 80.  Those JSIN statistics state that the average length of imprisonment that is imposed is 52 months, while the median length of imprisonment is 60 months.  *Id*.  JSIN statistics provide valuable information, but they are not perfect.  The sample size of defendants to whom Mr. Silvestri is being compared, 94, is relatively small.  The JSIN statistics only examine sentences imposed within the last five fiscal years (FY 2018 – FY 2022).  *Id*.  Their default statistics do not include probation-only or fine-only sentences, which increases the average.  They do not distinguish between time-served sentences and all other prison sentences.  Furthermore, no distribution of the sentences imposed is

provided; thus, there is no ability to determine whether the statistics are either skewed by a few outliers, or generally are more evenly distributed.

But, the bottom line is the average sentence across the country for defendants sentenced under USSG § 2K2.1, with a Total Offense Level of 27 and a Criminal History Category of I, is 52 months, at most. Where the JSIN statistics are imperfect, and where Mr. Silvestri is in desperate need for continued treatment for his substance abuse issues, the requested sentence is still sufficient but not greater than necessary to achieve the varied goals of 18 U.S.C. § 3553(a), despite it being 10 months less than the average sentence in similar circumstances. The proposed sentence would be long enough for him to qualify for the Bureau of Prison's Residential Drug Abuse Program ("RDAP"), colloquially known as the 500-hour drug treatment program.

**4.      Grounds for Sentence Below the Guidelines.**

Mr. Silvestri believes that the requested sentence of 42 months incarceration with credit for time served, three years supervised release, a $10,000 fine, and a $100 special assessment, though it is below the sentence recommended by the sentencing guidelines, is sufficient but not greater than necessary to achieve the varied goals of 18 U.S.C. § 3553(a).

As this Court is well-aware, the guidelines are "merely advisory, which means that a district court has considerable leeway to impose a sentence that falls outside the range suggested." *United States v. Robinson*, 433 F.3d 31, 35 (1st Cir. 2005). Here, this Court should impose a sentence below those recommended by the guidelines because of the nature and circumstances of Mr. Silvestri's situation, which include his severe struggle with substance abuse, his lack of a criminal history and lack of a history of violence. Mr. Silvestri needs treatment for his mental health issues, but even more significant, he needs treatment for his substance abuse struggles. The requested sentence, particularly the request for three years of

supervised release, not only serves as a just punishment, as discussed *supra*, but it would allow Mr. Silvestri the best opportunity to treat his substance abuse issues and allow him to put himself on a healthier and more productive path in life while under supervision.

### III.    Conclusion

For the reasons explained above, Mr. Silvestri respectfully requests that this Court accept his Rule 11(c)(1)(B) plea and sentence him to the recommended sentence of 42 months incarceration with credit for time served, three years supervised release, a $10,000 fine, and a $100 special assessment.

Respectfully submitted,

*/s/ Hank Brennan*
Hank Brennan. (BBO # 634036)
Brennan & Associates
20 Park Plaza
Suite 400
Boston, MA 02116
617-720-1200
Email: hb@hbjustice.com

*/s/ George W. Vien*
George W. Vien (BBO # 547411)
DONNELLY, CONROY & GELHAAR, LLP
260 Franklin Street, Suite 1600
Boston, Massachusetts 02110
(617) 720-2880
gwv@dcglaw.com

*Counsel for Stewart Silvestri*

Dated:  October 3, 2023

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), on October 3, 2023.

                                        */s/ George W. Vien*
                                        George W. Vien