UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                                       )<br>)<br>STEWART SILVESTRI,                     )<br>)<br>)<br>         Defendant.                           ) | Criminal No. 23-cr-10153-DJC |

**GOVERNMENT'S SENTENCING MEMORANDUM**

In accordance with the plea agreement in this case (Doc. 22), the government recommends a sentence at the low end of the advisory guideline sentencing range: 70 months of imprisonment, 3 years of supervised release, a mandatory special assessment of $100, and forfeiture as alleged in the Information.

I.   **ADVISORY SENTENCING GUIDELINES**

The government agrees with the PSR's calculations of the defendant's offense level and criminal history category. The total offense level is 27. PSR ¶ 31. The defendant has no criminal history and is thus in criminal history category I. PSR ¶ 35. The advisory guideline imprisonment range is 70 to 87 months. PSR ¶ 66.

II.   **SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)**

Consideration of the § 3553(a) factors demonstrates that a sentence of 70 months is sufficient, but not greater than necessary, to meet the goals of sentencing.

A.   **Nature of the Offense**

The defendant is convicted of unlawful possession of machineguns. The defendant did not possess a 1920s-era "Tommy Gun." He possessed a modern arsenal of privately made

firearms; some modified to be fully automatic machineguns. A portion of the defendant's armament is depicted in the photograph below. These firearms and firearm parts were seized from the defendant's car at the time of his arrest on October 15, 2022.



At first glance, the pistols and rifle displayed here appear to be commercially manufactured weapons. They are not. The defendant manufactured these firearms from partially completed firearm frames (and a receiver for the rifle) that were not regulated in interstate commerce. They are privately made firearms also known as "ghost guns" because they lack the serial numbers required on commercially manufactured firearms. Partially completed firearm frames, also known as "80%" frames, could be acquired without a background check and shipped to a customer's door. With some technical knowledge, common tools, and less than 30 minutes, a customer can have a fully functioning firearm.[1] The defendant is prohibited from possessing firearms because he is an unlawful user of or addicted to a controlled substance. PSR ¶ 21. Undeterred from possessing firearms, he made these guns himself.

---

[1] https://www.npr.org/2022/04/12/1092063600/what-are-ghost-guns-explained (last accessed October 5, 2023).

One of the increasing dangers of these privately made firearms is that individuals, including the defendant, are obtaining and designing machinegun conversion devices for them. In particular, the Glock-style pistols that the defendant was manufacturing is compatible with an increasingly popular machinegun conversion device commonly known as a "selector switch" or a "Glock switch."[2] These coin-sized devices convert a semi-automatic pistol into a machinegun, capable of fully automatic gunfire. In its typical form, the Glock switch has a toggle that allows a shooter to select between semi-automatic and fully automatic firing. A photograph of a Glock switch is attached below.[3] The toggle is on the right side of the Glock switch.



---

[2] https://www.thetrace.org/2022/03/watch-machine-gun-conversion-glock-switch-auto-sear/ (last accessed October 5, 2023). The following link includes a video of a Glock switch in use.

[3] https://www.wwlp.com/news/i-team/illegal-aftermarket-add-ons-to-guns-found-in-massachusetts/ (last accessed October 5, 2023).

As shown in the video linked in footnote 2, a fully automatic pistol can have devastating consequences. Unlike a rifle, which has three points of contact to the shooter (two hands and the shoulder), a pistol only has two (two hands). Even a trained shooter cannot accurately fire such a weapon (see demonstration of semi-automatic pistol versus pistol fitted with a Glock switch in video from footnote 2 at 0:45, note splashing of the water during automatic gunfire). These machineguns are designed to inflict maximum damage in minimal time. This is especially true when a machinegun pistol is paired with a large capacity magazine, like the 50-round drum magazine possessed by the defendant and demonstrated in the video. The proliferation of these deadly weapons is deeply concerning to both law enforcement and public health officials alike.[4] One does not have to look far into the headlines to see the devastating impact of these weapons in the District of Massachusetts.[5]

The defendant was not only in possession of Glock switches (PSR ¶ 16), but he also designed his own machinegun conversion devices, which had no toggle. Photographs of one of the defendant's machineguns are attached below. The machinegun conversion device installed on

---

[4] "This [machinegun conversion devices] is a problem that needs to be focused on immediately… These devices are flooding our communities… The public health impact of gun violence is devastating… I applaud you all for taking on these tough questions because gun violence is not just a law enforcement problem. It is a public health problem." Steven Dettlebach, director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives speaking at a gun violence prevention forum in February 2023. https://www.thetrace.org/2023/03/atf-auto-sears-dettelbach-machine-gun/ (last accessed October 5, 2023).

[5] https://www.dotnews.com/2023/seven-shot-talbot-avenue-jourvert-parade-passes-nearby-police-say-two (last accessed October 5, 2023).

https://www.cbsnews.com/boston/news/dorchester-shooting-arrest-gianni-johnson-micah-ennis/ (last accessed October 5, 2023).

the firearm is noted in red. The machinegun conversion device removed from the slide of the firearm is also depicted.





An increased danger of the defendant's version of the machinegun conversion device is that the device is flush with the stock backplate of the pistol slide. A shooter handling the defendant's machinegun would have no way of distinguishing this machinegun from a semi-automatic pistol. Thus, a shooter expecting to fire one round per trigger pull (the typical functioning of a semi-automatic firearm), instead releases an uncontrolled, fully automatic barrage of bullets.

      The government does not suggest that the defendant had evil or malicious intent to use these weapons. Yet, the defendant was manufacturing and designing dangerous and deadly

weapons. Only the slightest hint of negligence is needed to convert his "hobby" into a tragedy. As discussed further below, the defendant's mental health and drug use only makes that type of negligence more probable.

### B. Characteristics of the Defendant

The defendant is a young man who was raised in an evidently caring and supportive family. PSR ¶ 42-45. His mental health and substance abuse history, however, are concerning when coupled with the defendant's fascination with machineguns and privately made firearms. See PSR ¶ 49-50; 52-55.

The defendant's mental health history has correlations to aggression and violence.[6] Again, the government has no indication that the defendant had any malicious plans to use these firearms. Further, the government has no indication that the defendant has a criminal history of violence. Yet, the defendant's mental health history is one factor that increases the risk of danger to the community when he possessed these machineguns. A significant sentence of imprisonment will afford the defendant an opportunity to obtain mental health and correctional treatment away from the temptations of re-engaging with his fascination with firearms.

The defendant's substance abuse history also prohibits him from possessing firearms. It is an inherent risk for inebriated individuals to possess dangerous weapons, which greatly increases the risk of death by firearm.[7] Aside from that inherent risk, it is not a far leap to suggest that the defendant could have easily traded firearms for drugs.  The defendant developed an expertise in

---

[6] *See*  https://pubmed.ncbi.nlm.nih.gov/33556687/ and https://pubmed.ncbi.nlm.nih.gov/34292012/ (last accessed October 6, 2023).

[7] Association of Drug and Alcohol Use With Adolescent Firearm Homicide at Individual, Family, and Neighborhood Levels https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5567686/#R10 (last accessed October 6, 2023)

highly valuable tools of the drug trade. *United States v. Ramirez-Frechel*, 23 F.4th 69, 75 (1st Cir., 2022). If the defendant ever needed money for drugs, he had a cache of desirable weapons to trade for them.

As evident in the PSR and the defendant's numerous letters of in aid of sentencing, he enjoys the support of a loving and caring family and community. Yet, a significant sentence is warranted to ensure the defendant obtains correctional treatment that adequately addresses his mental health and substance abuse history and their relation to firearms.

**C.     Specific and General Deterrence**

The defendant has demonstrated remorse and quick acceptance of responsibility for his crime. Doc. 28-11 at 4. Yet, a significant sentence is still warranted to deter the defendant from re-engaging in manufacturing machineguns. The defendant's sentence should reflect that his behavior has serious consequences.

A significant sentence of imprisonment is also warranted to deter others similarly situated to the defendant from becoming involved in manufacturing and illegally possessing machineguns. Others with a similar fascination with firearms must understand that illegal machinegun manufacturing and possession will be met with a severe consequence.

The Court must also avoid unwarranted sentencing disparities among defendants with similar records and convicted of similar conduct. A sentence of 70 months is slightly above the average and median sentence for individuals sentenced under USSG § 2K2.1. PSR at 17. The slight increase over the average is warranted here given the increased public safety and public health threat of machineguns.

### III.     CONCLUSION

The government's sentencing recommendation takes into account the various factors set forth in § 3553(a) and the sentencing guidelines. The United States recommends that the Court sentence the defendant to 70 months in prison to be followed by 3 years of supervised release, and that the defendant be ordered to pay a mandatory special assessment of $100 and forfeit the firearm, firearm parts, and ammunition seized from him in relation to this case.

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By:     */s/ Philip Cheng*
      Philip C. Cheng
      Assistant U.S. Attorney
      1 Courthouse Way, Suite 9200
      Boston, MA  02210

Dated:  October 6, 2023

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and copies will be sent to those indicated as non-registered participants.

*/s/ Philip Cheng*
Philip C. Cheng
Assistant United States Attorney

Date:  October 6, 2023